Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT KUB, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CFLAB, LLC; and DOES 1-10, <br><br> Defendant(s). | Case No. 2:23-cv-10404 <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* |

Plaintiff ROBERT KUB ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following against Defendant CFLAB, LLC upon information and belief based upon personal knowledge:

## INTRODUCTION

1. Plaintiff's Class Action Complaint is brought pursuant to the

Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA").

2.    Plaintiff, individually, and on behalf of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant debiting Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).  Defendant fails to clearly and conspicuously disclose the terms of its autorenewal and additionally conditions its purchase on an illegal "negative option" as defined by 15 U.S.C. § 8403.

3.    Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter arises under a federal statute, namely the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

5.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of the State of California and resides within this judicial district.

## PARTIES

6.    Plaintiff, ROBERT KUB ("Shaw"), is a natural person residing in the state of Michigan, and is a "consumer" as defined by 15 U.S.C. §1693a(6).

7.    At all relevant times herein, Defendant, CFLAB, LLC ("CF" or "Defendant"), was a Delaware company with its principal place of business in Los

Angeles, California, engaged in the business of selling monthly subscription services to its online platform where users may connect with potential start-up business co-founders.

8.   The above-named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

9.   Plaintiffs are informed and believe that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## **GENERAL FACTUAL ALLEGATIONS**

10.   Defendant CF is an online platform that allows its users to connect with one another for the purpose of co-founding start-up companies.  Its website is CoFoundersLab.com.[1]

11.   Creating an account on Defendant CF's website is free, however, Defendant CF offers a number of paid subscription services to access "premium" features of its website.

---

[1] https://cofounderslab.com/

12.     One such subscription is for Defendant CF's "Launch" program. Consumers may sign up for a 30-day free trial of the Launch program on Defendant CF's website.

13.     After that 30-day free trial expires, Defendant CF automatically enrolls them in a subscription for the Launch program, and begins billing them at a rate of $89.00 per month.

14.     However, Defendant fails to provide clear and conspicuous disclosures mandated by California law, resulting in unauthorized charges for Defendants' renewing Launch program subscription.

15.     Many consumers report that they were enrolled and billed for Defendant CF's Launch program, even though the consumers did not submit a request to be enrolled. Additionally, many consumers also complain that Defendant CF continued to bill them for the Launch program after they cancelled their subscription.

16.     For example, Defendant has a rating of 2.8/5 on Google[2], there are a plethora of negative reviews, many of which relate to consumers unknowingly being enrolled into Defendant's Launch program and being charged the subscription fee without their authorization,  and/or consumers' inability to timely cancel their Membership:

> **Joaquin Contreras (One Star):** I am being charged for a service I do not use (nor have ever used) by this scam of a company.  They charge US $89 for LAUNCH, something I do not even have access to.  Also, I cancelled my su[b]scription and contacted support without luck.  I will have to block my credit card.[3]

---

[2] *See* https://www.google.com/search?q=co+founders+lab
[3] *See* https://g.co/kgs/mCTo7d

**Kate Verlaan (One Star):** What cofounders lab is doing is criminal.  They were charging me $89 a month every month and now they are charging me $89 every TWO weeks! . . . I don't know how they sleep at night knowing they are stealing money from bootstrapping founders.[4]

**Adam A (One Star):** Absolute scam of a company. Charged my card for an additional year after the requested cancellation.[5]

**Jeff Bruce (One Star):** They have been charging me for months after I've canceled my subscription.  Do not use this.[6]

17.    The Federal Trade Commission ("FTC" or "Commission") issues their Policy Statement to provide guidance regarding its enforcement of various statutes and FTC regulations addressing negative option marketing and operating. Typically, negative option arrangements include, but are not limited to, automatic renewals, continuity plans, free-to-pay or fee-to-pay conversions, and prenotification plans. Automatic renewals allow sellers to unilaterally renew consumers' subscriptions when they expire, unless consumers affirmatively cancel their subscriptions by a certain date. Free trial marketing (e.g., free-to-pay conversions) provides consumers the opportunity to receive goods or services for free (or at a nominal fee) for a trial period.

18.    Over the years, unfair or deceptive negative option practices have remained a persistent source of consumer harm, often saddling shoppers with recurring payments for products and services they did not intend to purchase or did not want to continue to purchase. These matters involve a range of deceptive or unfair practices, including inadequate disclosures of hidden charges in ostensibly

---

[4] *See* https://g.co/kgs/eVNjTV
[5] *See* https://g.co/kgs/MhZeaa
[6] *See* https://g.co/kgs/9tErHp

"free" offers and other products or services, enrolment without consumer consent, and inadequate or overly burdensome cancellation and refund procedures. In its guidance and cases, the FTC has highlighted four basic Section 5 requirements that negative option marketing must follow to comply with Section:

(1) First, marketers must clearly and conspicuously disclose the material terms of a negative option offer including, at a minimum, key terms such as the existence of the negative option offer, the offer's total cost, and how to cancel the offer;

(2) Second, sellers must disclose these material terms before consumers agree to the

Purchase;

(3) Third, marketers must obtain consumers' express informed consent to such offers; and,

(4) Fourth, marketers must not erect unreasonable barriers to cancellation or impede the effective operation of promised cancellation procedures, and must honor cancellation requests that comply with such procedures.

19.    An example of Defendant CF's violations of the EFTA can be illustrated by examining the sign-up page for consumers who sign up for Defendant CF's Launch program.

20.    The sign-up page, in small gray font, states 'Today we're giving you EXCLUSIVE access with a **FREE 30 day trial to Launch**." *See* Ex. 1 (emphasis in original). It also states that the Launch program includes a "bonus **FREE Premium Membership**." *Id.*

21.    Then, after this bolded text, again in small gray font, are the words "Thereafter join for our special introductory rate for only $89 p/m. **\*CANCEL ANYTIME\***" *Id.*

22.    In the middle of the sign-up page, in larger black font, is the sentence "START YOUR 30 DAY FREE TRIAL NOW," which is followed by smaller gray font stating "YOUR DEDICATED GROWTH PARTNER TO HELP YOU TAKE YOUR IDEA OR STARTUP TO THE NEXT LEVEL" *Id.*

23.    Below these words is a listing of the Launch program and its price which states "FREE 30 days then $89 p/m." *Id.*

24.    The user is then prompted to enter their email and credit card information into the four corresponding text boxes. *Id.*

25.    Finally, at the bottom of the page is a large red button with the words "JOIN LAUNCH FREE" in large white font, followed by smaller gray font that says "START YOUR FREE 30 DAY TRIAL INSTANTLY." *Id.*

26.    Nowhere on the sign-up page is it stated that the Launch program will automatically renew each month after the thirty day trial, nor does the sign-up page inform users that Defendants will automatically charge their credit or debit cards.

27.    Additionally, the only language suggesting that a monthly charge would apply (i.e. "$89 p/m") is not within temporal proximity to the "JOIN LAUNCH FREE" button.

28.    As a result, consumers do not affirmatively consent to the renewal terms of Defendant's Membership or the recurring purchase of specific items.

29.    Additionally, consumers are never provided with an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.

## **PLAINTIFF'S FACTS**

30.    In or around March of 2023, Plaintiff signed up for the free trial of Defendant CF's Launch program.

31.    Plaintiff signed up for this Launch program by using the sign-up page described in ¶¶ 21–28, above, and depicted in Exhibit 1.

32.    Defendant CF did not provide an acknowledgement that included the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.

33.    At the time of signing up, Plaintiff was unaware that Defendant would automatically enroll him in a monthly subscription of $89 per month for its Launch program.

34.    Despite this, and without his knowledge, Defendant enrolled Plaintiff in its Launch program with a subscription of $89 per month.

35.    Plaintiff first noticed this in April of 2023, when Defendant CF first charged Plaintiff's debit card the monthly subscription fee.

36.    Plaintiff has attempted to cancel the Launch program membership multiple times, including by email and by submitting a support ticket through Defendant CF's website, but Defendant CF has not honored those cancellation requests.

37.    As a result, Defendant CF continues to charge Plaintiff's debit card $89 per month.

38.    Defendant CF's Launch program subscription offer is what is known as a negative option by the FTC, which is defined as "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 CFR § 310.2.

39.    Pursuant to 15 U.S. Code § 8403, it is unlawful to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature unless the "text that clearly and

conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information," "obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction;" and "provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."

40.    Defendant CF's negative option sales scheme failed to satisfy all three prongs, any of which is fatal and unlawful.  The only text that disclosed any material terms of the transaction was in significantly smaller text above the form obtaining the consumer's billing information.  Moreover, the button users must press to actually sign up is in bright red and states "JOIN LAUNCH FREE." Accordingly, Defendant CF failed to obtain a consumer's express informed consent to make such charges.  Further, Defendant CF has refused to honor cancelation requests, and has not provided consumers with a simple mechanism for cancelling their memberships.

41.    Because Defendant CF failed to conspicuously disclose all material terms, it also failed to obtain Plaintiff's express informed consent for the recurring electronic fund transfers it thereafter made.

42.    Further, Defendant CF did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing these recurring or automatic payments.

43.    Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

44.    On information and belief, Plaintiff alleges that Defendant CF's policy and practice is to engage in illegal and deceptive negative option sales to unfairly surprise consumers with large recurring transactions as part of a "free trial" scam.

45.     The material circumstances surrounding this experience by Plaintiff were the same, or nearly the same, as the other class members Plaintiff proposes to represent, and Plaintiff and all putative class members were required to pay, and did pay, money for the services marketed and sold by Defendant.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of himself and all others similarly situated, as  members of the proposed class (the "Class") defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendant without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

47.     Plaintiff represents, and is a member of The Class, consisting of all persons within the United States whose bank accounts were debited on a recurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

48.     Defendant, its employees and agents are excluded from The Class. Plaintiff does not know the number of members in The Class, but believe the Class members number in the thousands, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

49.     The Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of The Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believe and thereon allege that The Class includes thousands of members.  Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendant.   Plaintiff and

Plaintiff's counsel will review such records in discovery to determine membership in the Class.

50. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the following:

    a. Whether the members of the Class were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments.

    b. Whether Defendant did not request, nor did it provide, Class members with written agreements memorializing the automatic or recurring electronic payments.

    c. Whether the members of the Class did not provide either a written ("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments.

    d. Whether, despite not providing written or electronic authorization for payments to be drawn from their accounts, Defendant took unauthorized payments from Class members' accounts.

51. As a person whose bank account was debited on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, Plaintiff is asserting claims that are typical of The Class.

52. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

53. A class action is superior to other available methods of fair and

efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

54.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Classes members to protect their interests.

55.    Defendant has acted or refused to act in respects generally applicable to The Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## COUNT I:
## VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT
## ON BEHALF OF THE EFTA CLASS

56.    Plaintiff reincorporates by reference all of the preceding paragraphs.

57.    Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

58.    Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the

term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

59.     Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

60.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable."  *Id.* at ¶10(b), comment 6.

61.     Defendant CF debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers for the rates charged from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

62.     Defendant CF has debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

## **TRIAL BY JURY**

63.     Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, ROBERT KUB individually, and on behalf of all others similarly situated, respectfully requests judgment be entered against Defendant, for the following:

    a.  That this action be certified as a class action on behalf of The Class and Plaintiff be appointed as the representative of The Class;

    b.  Statutory damages of $1,000.00, per Class Member, pursuant to the Electronic Fund Transfer Act, §916(a)(2)(A);

    c.  Actual damages;

    d.  Restitution of the funds improperly obtained by Defendant;

    e.  Any and all statutory enhanced damages;

    f.  All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

    g.  For prejudgment interest at the legal rate; and

    h.  Any other relief this Honorable Court deems appropriate.

Respectfully submitted this 12th Day of December, 2023.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:   <u>/s/ Todd M. Friedman</u>
          Todd M. Friedman
          Law Offices of Todd M. Friedman
          Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

